1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

---

| UNITED STATES OF AMERICA, | Case No. 18-CR-20-SWS |
|---|---|
| Plaintiff, | |
| | Casper, Wyoming |
| vs. | |
| ARAPAHO JAMES OLDMAN, MATTHEW WHITEPLUME, MONTY TABAHO, and JORI LAMEBULL, | January 3, 2019 10:19 a.m. |
| Defendants. | |

---

TRANSCRIPT OF ORAL RULING PROCEEDINGS

BEFORE THE HONORABLE SCOTT W. SKAVDAHL
UNITED STATES DISTRICT JUDGE

---

APPEARANCES:

For the Plaintiff:      MR. JASON M. CONDER
                        United States Attorney's Office
                        P.O. Box 449
                        Lander, Wyoming  82520

For Defendant Oldman:   MS. GALIA AMRAM
                        Office of the Federal Public Defender
                        214 West Lincolnway, Suite 31-A
                        Cheyenne, Wyoming  82001

*Proceedings recorded by stenography; transcript produced by computer-aided transcription.*

2

APPEARANCES:  (Cont.)


For Defendant          MR. P. CRAIG SILVA
Whiteplume:            Williams, Porter, Day & Neville, P.C.
                       P.O. Box 10700
                       Casper, Wyoming  82602


Court Reporter:        MS. ANNE BOWLINE, RMR, CRR
                       111 South Wolcott Street, Room 217
                       Casper, Wyoming  82601
                       (307) 235-3376

1        (Proceedings commenced at 10:19 a.m., January 3, 2019.)

2        THE COURT:  All right.  Counsel, we're in session in
3   the matter of the United States of America versus Arapaho
4   James Oldman, Matthew Whiteplume, Monty Tabaho, and Jori
5   Lamebull, Case Number 18-CR-20.  I note the presence of
6   Ms. Amram on behalf of Mr. Oldman, the presence of Mr. Silva
7   on behalf of Mr. Whiteplume, and the presence of Mr. Conder on
8   behalf of the United States.

9        The matter's before the Court for a couple of issues.
10  First, let me take up the motions in limine.  The defendant
11  has filed -- defendant Mr. Oldman has filed a motion in limine
12  to exclude any *Bruton* statements and indicated in that motion
13  that the parties would likely reach agreement on the issue.
14  It does not appear -- well, given the current status as to the
15  change of pleas, it does not appear that that would
16  potentially be a problem, but let me just ask counsel, do you
17  need the Court's guidance as to any *Bruton* rulings or
18  preclusions?  Ms. Amram?

19       MS. AMRAM:  No, not at this time, Your Honor.

20       THE COURT:  All right.  Then I will turn to the
21  second motion, which is a request to exclude Government
22  witnesses that are either not designated as representatives or
23  necessary to the presentation of testimony or the presentation
24  of the case.

25       I'll grant the Rule 615 and sequester witnesses.  In

1    doing so, I'll require that each party advise their respective
2    witnesses as to the sequestration order, and they shall advise
3    them they are not to communicate with one another about the
4    testimony that has been provided or to be provided and that
5    such violations could result in the witness being precluded
6    from testifying or the testimony being limited.  I will rely
7    upon counsel, who knows who their witnesses are, to
8    communicate that as well as any other rulings of the Court
9    that could impact their testimony.
10              Any other issues regarding the sequestration,
11   Ms. Amram?
12              MS. AMRAM:  No, Your Honor.
13              THE COURT:  Mr. Conder?
14              MR. CONDER:  Your Honor, the only thing I would
15   have -- and I think the Court is -- for the case agent to be
16   able to sit at the table.  She will likely be testifying as a
17   witness, but since she is the case agent, I would ask that she
18   be allowed to sit at the table.  And the United States
19   recognizes the same for defense investigators and things like
20   that.  United States would obviously comply and convey
21   sequestration to all the other witnesses and would seek
22   permission for the case agent to be able to sit throughout the
23   trial at counsel table with the Government.
24              MS. AMRAM:  And I don't object to that, Your Honor.
25              THE COURT:  All right.  I will provide that obviously

1  case agents and other investigative assistants and paralegals,
2  et cetera, will not be subject to the rule of exclusion under
3  615.  To the extent either party disagrees with the other
4  parties' presence or other people that are present, then you
5  may bring it to the Court's attention.
6        All right.  The last matter is the obligation to
7  produce *Brady*, *Giglio,* and Jencks Act materials.  And
8  obviously those should be produced, as previously were ordered
9  and the timing of which as previously noted by the Court in
10 its order on scheduling.
11       I believe that addresses all the defendant's motions
12 in limine.  Ms. Amram, do you agree?
13       MS. AMRAM:  Yes, Your Honor.  I did just want to put
14 one thing on the record that Mr. Conder's aware of.  But the
15 Court's 404(b) deadline has passed, and the Government didn't
16 file a notice of 404(b).  I had talked to Mr. Conder about it,
17 and I am in agreement that there's an incident in which one of
18 his witnesses, Fatima Addison, alleges that Mr. Oldman hit her
19 to keep her quiet about the case.  And I am agreeing that that
20 is not precluded under 404(b), but other than that, I just
21 want to put on the record that no 404(b) should be put into
22 evidence.
23       THE COURT:  All right.  Mr. Conder?
24       MR. CONDER:  That is correct, Your Honor.
25       THE COURT:  All right.  I would then grant

1   defendant's motion in limine for those reasons and limited to
2   that extent as noted on the record by the Court.  And
3   regarding the 404(b), based upon the parties' agreement, then
4   the 404(b) will be limited as noted.
5          Let's turn to the Government's motion in limine,
6   which is to limit any evidence or discussion by counsel as to
7   the potential consequences or sentence that could be faced by
8   the defendant or defendants.  I look at this as applicable to
9   any of the defendants that go to trial.  To the extent there's
10  a change of plea and there is examination or cross of that
11  co-defendant that is made and subject to impeachment and/or
12  motive issues, I would see that information concerning what
13  potential penalties that they could have faced would be
14  potentially relevant.  But as I read this motion, it is
15  limited to sentencing consequences of any defendants that go
16  to trial and any reference to the jury about the consequences
17  of any verdict that would be imposed.
18         I will grant the motion in limine.  It appears
19  appropriate.  To the extent that there's been a change of any
20  dynamic or issue due to some kind of a statement by a witness,
21  then the Court will require that counsel approach the bench
22  and seek relief from the order or the Court's in limine order
23  before delving into any area this Court has precluded inquiry
24  into.
25         Any issues or further clarification needed regarding

1 that?  Mr. Conder?

2         MR. CONDER:  No, Your Honor.

3         THE COURT:  Ms. Amram?

4         MS. AMRAM:  I just want to make sure I understand.  I
5 know I can't say in closing that Mr. Oldman is facing
6 mandatory life if he gets convicted of first degree murder,
7 and I can't, you know, like, ask Agent Coble that on the
8 stand.  And that is very clear to me.  But I can still
9 question Mr. Whiteplume, if he testifies, about the fact that
10 he was facing mandatory life and is now having the benefit
11 from a plea to second degree because he is now facing less
12 serious consequences?

13         THE COURT:  So long as you do not link it to your
14 client, you may.  The issue that I see that's appropriate
15 fodder for grist is what motives did he have and what has he
16 done, why did he take the plea.  And that's part of that.  But
17 I don't want that linked with that "You were facing the same
18 charge as my client was facing, and you're going to get out of
19 here with X sentence as opposed to my client."

20         MS. AMRAM:  Okay.  I understand.

21         THE COURT:  All right.  Any concerns or other further
22 clarification, Mr. Conder?

23         MR. CONDER:  No, Your Honor.

24         THE COURT:  All right.  The last matter that I have
25 before me is the defendant's motion to exclude Government

1  expert Palmer's testimony for failure to abide by the Court's
2  discovery order for being outside of the scope of the expert
3  designation and for failing to meet the requirements of the
4  Federal Rule of Criminal Procedure 16 and Federal Rules of
5  Evidence 702 and 703 filed by defendant.  This is -- I don't
6  have the ECF number on it.  Sorry.  234.  I have also reviewed
7  the United States' response, which is document 247 to that
8  motion.
9           And based upon the Court's review of the applicable
10 case law, the Court will deny the motion of defendant.  The
11 Court would note the scope of expert disclosure under criminal
12 cases is covered under Rule 16(a)(1)(G) and Rule 16(b)(1)(C)
13 as to defendant's obligation.  In any event, the Rules of
14 Criminal Procedure provide for a more limited disclosure than
15 required under the Rules of Civil Procedure.  In civil cases,
16 a complete statement is required under Rule 26(a), whereas
17 only a written summary is required in criminal cases.  See
18 *United States v. Taylor*, 2009 Westlaw, 10707452 District of
19 New Mexico, July 16, 2009.
20          The provisions of Rule 16 are intended to meet the
21 need for counsel to learn that an expert is expected to
22 testify by, first, requiring notice of the expert's
23 qualification, which in turn will permit the requesting party
24 to determine whether in fact the witness is an expert within
25 the definition of Federal Rule 702.  Next, the requesting

1  party is entitled to a summary of the expected testimony.  And
2  finally, and perhaps most importantly, the requesting party is
3  to be provided with a summary of the basis of the expert's
4  opinion.  See *United States v. Nacchio*, N-A-C-C-H-I-O, 555
5  F.3d 1234 at 1237.
6          In this case the Court would find that there is
7  sufficient identification as to the general area of testimony
8  that Dr. Palmer is anticipated to offer opinion.  The deadline
9  for challenges as to *Daubert* have passed, and there was no
10 challenge made as to his qualification or ability.  Certainly,
11 foundational objections can be made at the time of trial.  To
12 the extent he lacks proper foundation, the Court will
13 certainly consider those.
14         But in this case it does not appear -- well, could it
15 have been more clear?  Yes.  But I don't believe that there is
16 a lack of notice to counsel as to the general area of
17 testimony that Dr. Palmer is anticipated to -- or was
18 anticipated to make or give his opinion on, and therefore I
19 believe that the motion should be denied.  I would also cite
20 the parties to *United States v. Brown*, 592 F.3d 1088 at 1090.
21         All right.  Without challenging the ruling of the
22 Court, are there any other matters or issues that we need to
23 address at this time so we can be prepared for trial?
24 Ms. Amram?
25         MS. AMRAM:  Your Honor, I have two questions.  One

1  is, do you know what the trial hours will be for the trial?
2         THE COURT:  Trial hours will be 8:30 to around noon,
3  and then we'll generally take an hour for lunch, unless I have
4  a sentencing or some other proceeding at 1:00.  Then I'll go
5  ahead and we'll break a little after lunch, and you'll get
6  your hour but I'll probably get half an hour.  And we'll come
7  back -- plan to come back around 1:30 or so depending upon
8  what the nature of the proceeding is.  Then we'll continue on
9  until 5:00 or 5:30.  If we have a witness on the stand, we
10 might push just a little further to get that witness off the
11 stand so that we don't have witnesses inconvenienced in terms
12 of scheduling or the retooling of cross-examination overnight.
13 So --
14        MS. AMRAM:  The reason -- I'm sorry.  I didn't mean
15 to interrupt.
16        THE COURT:  Go ahead.
17        MS. AMRAM:  So the reason I'm asking is because
18 Mr. Conder and I have been talking about what his best guess
19 is for when his case will be over, because I am bringing one
20 of the lab people from the FBI lab in Quantico, Virginia, and
21 they have a rule where they will only be gone for three days
22 and then they'll fly back, and it takes a day to get into
23 Casper.  And so if I bring him out on Friday and he doesn't
24 get -- and Mr. Conder's not done, he'll fly back.
25        So what my plan was -- is to bring him out for Monday

1  under the assumption that Mr. Conder's case will take a week
2  or close to a week, and then I could have -- we have some
3  local witnesses if he finishes, like, half a day early on
4  Friday that we could put him there, maybe a full day possibly,
5  and then have the FBI witness testify on Monday.
6          But I just wanted to let the Court know that that's
7  what I'm trying to do and see if the Court has any concerns
8  about that, because I am worried if I have him scheduled for
9  the first week and he doesn't get on the stand he's just going
10 to fly back.
11         THE COURT:  Okay.  Well, I'm willing to -- certainly
12 on Friday if we have completed all the witnesses that we can
13 obtain and we're at 3:00, that's fine.  We'll take our recess
14 and then reconvene on Monday.  So I don't -- I don't have
15 problems there.  I just don't want to give up a day and lose
16 that opportunity or time.  And if it's calculated that
17 Mr. Conder's case is going to be completed sometime on Friday,
18 then we can call any other witnesses that might fill that void
19 or we can look at recessing on Friday to have a longer
20 afternoon and get people home for the weekend.
21         MS. AMRAM:  Okay.  Thank you, Your Honor.  And then
22 the other thing I just wanted to ask the Court about is that
23 for the JERS, we put documents that we think we would maybe
24 use in our case in chief, we sent that to the clerk for JERS.
25 It's not that many.  The vast majority of documents we have

1  would be for possible impeachment, and we did not submit those
2  for JERS because my understanding from the Goodman trial is
3  that impeachment docs don't go into JERS.  And also it's just
4  an enormous -- like, well over 500 documents, reports, and
5  witness interviews and stuff like that.  So we did not put
6  that on our CD that's going to the clerk for JERS.  We do have
7  it uploaded into the same program that we used for the *Daubert*
8  hearing so if we need the witness to look at it either paper
9  copies or we can put it on the screen for the witness or the
10 Court or whoever.  But I just wanted to make sure that was in
11 accordance with the Court's protocol.
12         THE COURT:  I want to make sure we have all the
13 likely exhibits to be introduced and go to the jury submitted
14 to the clerk's office.  To the extent you're planning to use
15 them solely as impeachment and not as substantive evidence,
16 then you may retain those on a separate drive or system just
17 as long as you exchange those with each other to the extent
18 necessary under the rules.  Understanding there may be some
19 attorney-client communication and/or work product that you
20 would not disclose necessarily for impeachment, but I want to
21 make sure we limit surprises and have everything we need.
22         MS. AMRAM:  Okay.  Thank you, Your Honor.
23         THE COURT:  All right.  Mr. Conder, any questions?
24         MR. CONDER:  Not about any of that, Your Honor.  I
25 guess a dumb question.  I should check my emails.  But I

1  wanted to make sure what time you wanted us there on Monday to
2  determine any preliminary matters.  I know that we were sent
3  the Court's preliminary jury instructions, and I think maybe
4  that contained it.  But I just wanted to double-check because
5  my brain's frozen.  So I apologize, Your Honor.
6              THE COURT:  Well, it's a lot colder up in Lander.
7  We'll plan on starting at 8:30 a.m. on Monday.  And what I'll
8  do is I'll have an informal discussion with you at that time
9  to see if there are any issues that we need to go on the
10 record about before we bring in the jury.  The jury will be
11 doing their video.  This is a new panel, so they'll be doing
12 all that stuff.
13             Once they're complete -- which is, I hope, around
14 8:55 -- we'll bring them up.  And the way I will do that is
15 we've got 58 that are identified, although inevitably it will
16 be dropping down below 58.  I'm anticipating at least 55
17 hopefully.  We'll put 31 on the left-hand side as you face it,
18 or the south side of the courtroom, in the bleachers.  And we
19 will qualify everybody, but then we'll put those 50 -- or 31
20 on that side, and we will ultimately pass for cause or verify
21 there is no cause for the challenge to those 31.  And once we
22 do that and complete the voir dire, then I'll have you
23 exercise your peremptory challenges.
24             And I'm assuming at this point in time -- and maybe
25 that's an assumption I shouldn't make -- that Mr. Oldman is

1   the lone defendant remaining that is likely to go to trial.
2           MR. SILVA:  Your Honor, I think -- this is Craig
3   Silva.  I think that's probably correct, at least from my
4   defendant's point of view.
5           THE COURT:  So assuming that's the case, the exercise
6   of peremptory challenges will go first by the United States
7   and then, two, by defendant.  So we'll go one, two, one, two,
8   one, two.  And then we'll go one, one until the U.S. gets six
9   and I believe the defendant gets ten.  And then you each will
10  have one for the alternate.
11          So the first 12 -- and the alternate pool will be
12  jurors number 31, 30, and 29, and you may not exercise your
13  initial peremptories on anyone in that pool.  After we get the
14  pool of jurors, then you'll turn to the alternate pool and be
15  able to each exercise one on that.  If you both skip your
16  peremptory challenges, I'll deem waiver of the further
17  peremptories, and the first 12 selected and not challenged
18  will be the jurors.  And then we'll turn to the alternate.
19          Any clarification or confusion on that?  Ms. Amram?
20          MS. AMRAM:  No, Your Honor.
21          THE COURT:  Mr. Conder?
22          MR. CONDER:  No, Your Honor.
23          THE COURT:  All right.  Let me ask the last thing so
24  that we can plan accordingly.  Any potential as to -- the plea
25  deadline is today.  Where do we stand on the potential or lack

1  of any potential?  Ms. Amram?
2          MS. AMRAM:  I think it's very unlikely the case will
3  settle.
4          THE COURT:  Okay.  All right.  Very well.
5  Mr. Conder?
6          MR. CONDER:  Nothing I can think of at this time,
7  Your Honor, other than something that just crossed my mind.
8  Again, this is one of those housekeeping things maybe we can
9  talk about Monday morning.  But the time of opening
10 statements?
11         THE COURT:  So you will each be allocated 30 minutes
12 for voir dire.  You'll each be allocated 30 minutes for
13 opening.  However, if you need more than 30 minutes after you
14 prepare and plan and prep it, you'll be able to have more.
15 The only caveat is that I will give you whatever amount of
16 time, and you both will get that amount of time.  But you
17 can't increase it in the middle of it.
18         So in other words, once you say 45 minutes, that's
19 going to be the time that you'll have.  You can't say after 44
20 minutes of your opening, "Oh, Judge, I need five more," just
21 so that everybody has a fair time slot and we have some
22 limitation there.  The same for closing will apply.  But I
23 won't ask you until Monday morning where we are on that and
24 what amount of time you need.
25         I would anticipate --

1       MR. CONDER:  Thank you, Your Honor.
2       THE COURT:  And I would anticipate we'll finish jury
3  selection before we go to lunch, and I would anticipate that
4  we'll get to opening statements when we come back from lunch.
5  And depending upon where we are, we may even get into the
6  first witness.
7       All right.  Anything else?  Mr. Silva?
8       MR. SILVA:  No, sir, Your Honor.  Thank you.
9       THE COURT:  Ms. Amram?
10      MS. AMRAM:  No, thank you.
11      THE COURT:  All right.  Mr. Conder?
12      MR. CONDER:  Nothing further from the United States,
13  Your Honor.  Thanks.
14      THE COURT:  All right.  Thank you, Counsel, and keep
15  us posted on any issues.  But we will plan to see you
16  8:30 a.m. Monday morning and begin this process.
17      (Proceedings concluded at 10:43 a.m., January 3, 2019.)

17

1          C E R T I F I C A T E

3     I, ANNE BOWLINE, Court Reporter in the state of
4  Wyoming, a Registered Merit Reporter and Certified Realtime
5  Reporter, do hereby certify that I reported by machine
6  shorthand the proceedings contained herein on the
7  aforementioned subject on the date herein set forth, and that
8  the foregoing 16 pages constitute a full, true and correct
9  transcript.
10          Dated this 2nd day of May, 2019.

14                    /s/ Anne Bowline
15                    ANNE BOWLINE
                  Registered Merit Reporter
16                Certified Realtime Reporter